UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

GOVERNMENT EMPLOYEES INSURANCE COMPANY,
et al.,

                                      Plaintiffs,

       -against-

GRACIA MAYARD, et al.,

                                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Docket No.: 15-CV-4077
(CBA) (RML)

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(c) and 9(b) AND FOR SEVERANCE PURSUANT TO FED. R. CIV. P. 20(a) ON BEHALF OF YVETTE DAVIDOV, D.O. AND S&R MEDICAL, P.C.**

Respectfully submitted,

RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556-0926
RR File No.: 5100-830
Telephone:    (516) 357-3000
Facsimile:    (516) 357-3333

*Counsel for Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co.*

Of Counsel:
Barry I. Levy, Esq. (BL 2190)
Michael A. Sirignano, Esq. (MS 5263)
Ryan Goldberg, Esq. (RG 7570)

# TABLE OF CONTENTS

                                                                                    **Page**

TABLE OF AUTHORITIES ...................................................................................ii

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF RELEVANT FACTS ...............................................................3

ARGUMENT.........................................................................................................7

    I.     The Standards on a Motion for Judgment on the Pleadings..........................7

    II.    The Moving Defendants' Motion Pursuant to Fed. R. Civ. P. 12(c) Should be Denied in its Entirety ...........................................................................8

          A.    GEICO's Complaint Meets the Twombly-Iqbal Standards..............9

          B.    GEICO's RICO Claims are Pled with the Requisite Specificity.......13

          C.    This Court does Not Require RICO Statements and There is No Need for One I the Present Case.........................................................17

    III.    To the Extent That the Court Finds a Defect in the Complaint, GEICO Requests Leave to Replead.................................................................18

    IV.    The S&R Defendants Motion to Sever Should Be Denied ...........................18

          A.    The Standards on A Motion to Sever Pursuant to Rule 20(a) ...........19

          B.    GEICO's Allegations in the Complaint are Logically Connected and Share Common Questions of Law and Fact ...............................20

          C.    Joinder Is Appropriate in the Interest of Judicial Economy and Does Not Prejudice the Moving Defendants .....................................24

CONCLUSION.....................................................................................................27

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

Abraham v. American Home Mortgage Servicing, Inc.,
2013 WL 2285205 (E.D.N.Y. 2013) .................................................................. 19

AIU Ins. Co. v. Olmecs Med. Supply, Inc.,
2005 U.S. Dist. LEXIS 29666 (E.D.N.Y. 2005) ................................................ 15

Allstate Ins. v. Ahmed Halima,
2009 U.S. Dist. LEXIS 22443 (E.D.N.Y. 2009) ........................................... 12, 15

Allstate Ins. v. Etienne,
2010 U.S. Dist. LEXIS 113995 (E.D.N.Y. 2010) .......................................... 12, 15

Allstate Ins. v. Valley Physical Med. & Rehab.,
P.C., 2009 U.S. Dist. LEXIS 91291 (E.D.N.Y. 2009) .................................... 12, 15

Allstate Ins. v. Khaimov, et al.,
11-CV-2391 (E.D.N.Y.)(JG)(JMA) ........................................................ 22, 23, 26

Allstate Ins. v. Smirnov, et al.,
2014 WL 4437287 (E.D.N.Y. 2014) .................................................................. 12

Anderson News, L.L.C. v. AM Media, Inc.,
680 F.3d 162 (S.D.N.Y. 2012) ........................................................................... 18

Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009) ................................................................................... 8, 10

Bank Leumi Trust Co. of New York v. Istim, Inc.,
892 F.Supp 478 (S.D.N.Y. 1995) ...................................................................... 22

Bank of N.Y. v. First Millennium, Inc.,
607 F.3d 905 (2d. Cir 2010) ................................................................................ 7

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007) ............................................................................... 8, 10, 11

Beth Israel Medical Center v. Goodman,
2013 WL 1248622 (S.D.N.Y. 2013) ................................................................. 26

Blesedell v. Mobil Oil Co.,
708 F.Supp 1408 (S.D.N.Y. 1989) .................................................................... 20

City of New York v. Joseph L. Balkan, Inc.,
656 F. Supp. 536 (E.D.N.Y. 1987) .................................................................... 21

Crown Cork & Seal Co., Inc. Master Retirement Trust v. Credit Suisse First
    Boston Corp.,
    288 F.R.D. 331 (S.D.N.Y. 2013) ....................................................................20, 26

Deskovic v. City of Peekskill,
    673 F. Supp. 2d 154 (S.D.N.Y. 2009) ..................................................................21

Fong v. Rego Park Nursing Home,
    1996 WL 468660 (E.D.N.Y. 1996) ..............................................................19, 24

FragranceNet.com, Inc. v. FragranceX.com, Inc.,
    679 F. Supp. 2d 312 (E.D.N.Y. 2010) ...................................................................8

GEICO v. Ajudua, et al.,
    15-CV-5199 (MKB) ..............................................................................................12

GEICO v. Hollis Med. Care, P.C.,
    2011 U.S. Dist. LEXIS 130721 (E.D.N.Y. Nov. 9, 2011) .........................12, 15, 17

GEICO v. Koyfman,
    10-CV-5869 (ENV) ..............................................................................................12

GEICO v. Yutsis, et al.,
    11-CV-631 (FB) ...................................................................................................12

Gerace v. Cliffstar Corporation,
    2009 WL 5042621 (S.D.N.Y. 2009) ........................................................23, 24, 26

Globaltex Group, Ltd. v. Trends Sportswear, Ltd.,
    2009 WL 1270002 (E.D.N.Y. 2009) ..............................................................12, 13

Green v. Beer,
    2009 WL 3401256 (S.D.N.Y. 2009) ..............................................................24, 26

Jones v. Ford Motor Credit Co.,
    358 F.3d 205 (2nd Cir. 2004) ...............................................................................21

Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.,
    596 F.Supp.2d 821 (S.D.N.Y.2008) .....................................................................20

Laureano v. Goord,
    2007 WL 2826649 (S.D.N.Y. 2007) ..............................................................20, 26

Lehman Bros. Comm. Corp. v. Minmetals Int 'l Non–Ferrous Metals Trading Co.,
    1995 WL 608323 (S.D.N.Y. 1995) .....................................................................16

Liberty Mut. Ins. v. Excel Imaging, P.C.,
    879 F. Supp.2d 243 (E.D.N.Y. 2012) ............................................................12, 15

iii

Luparello v. Incorporated Village of Garden City,
290 F. Supp. 2d 341 (E.D.N.Y 2003) ........................................................................20

McGee v. State Farm Mut. Auto. Ins. Co.,
684 F. Supp. 2d 258 (E.D.N.Y. 2009) .......................................................................13

Moore v. New York Cotton Exchange,
270 U.S. 593 (1926) .................................................................................................21

Nassau Cnty. Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas Co.,
497 F.2d 1151 (2d Cir. 1974) ...................................................................................25

New York State Catholic Health Plan, Inc. v. Academy O & P Associates et al.,
15-CV-3298 (JBW)(VMS) .......................................................................................17

Oliver Schools, Inc. v. Foley,
930 F.2d 248 (2d Cir.1991) ......................................................................................18

Petrucelli v. Hasty,
605 F. Supp. 2d 410 (E.D.N.Y. 2009) .........................................................................8

Puricelli v. CAN Insur. Co.,
185 F.R.D. 139 (N.D.N.Y. 1999) ..............................................................................27

SBO Pictures, Inc. v. Does 1–20,
2012 WL 2304253 (S.D.N.Y. 2012) .........................................................................25

Scherer v. Equitable Life Assur. Soc'y of the United States,
347 F.3d 394 (2d Cir. 2003) .....................................................................................13

Sharkey v. Quarantillo,
541 F.3d 75 (2d Cir. 2008) ..........................................................................................7

State Farm Mut. Auto. Ins. Co. v. Makris,
2002 U.S. Dist. LEXIS 7567 ....................................................................................15

State Farm v. Cohan,
2009 U.S. Dist. LEXIS 125653 (E.D.N.Y. 2009) ................................................12, 15

State Farm v. CPT Med. Servs., P.C.,
2008 U.S. Dist. LEXIS 71156 (E.D.N.Y. 2008) ...................................................12, 15

State Farm v. Fayda,
2015 WL 4104840 (S.D.N.Y. 2015) ....................................................................12, 15

State Farm v. Kalika, M.D., et al.,
2006 WL 6176152 (E.D.N.Y. 2006) ....................................................................12, 15

State Farm v Liguori,
589 F. Supp.2d 221 (E.D.N.Y. 2008) ................................................................12, 16

Todaro v. Siegel Fenchel & Peddy, P.C.,
2008 WL 682596 (E.D.N.Y. 2008) ...........................................................................27

Travelers Indemnity Co. v. Valley Psychological, P.C.,
2012 WL 3614431 (E.D.N.Y. 2012) ...........................................................22, 23, 26

United Mine Workers v. Gibbs,
383 U.S. 715 (1966) ..............................................................................................23, 26

United States v. Aquavella,
615 F.2d 12 (2d Cir.1979) ............................................................................................19

Viada v. Osaka Health Spa, Inc.,
235 F.R.D. 55 (S.D.N.Y. 2006) ...................................................................................20

Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co.,
517 F.3d 104 (2d Cir. 2008) ..........................................................................................8

Wausau Bus Ins. Co. v. Turner Const. Co.,
2001 WL 963943 (S.D.N.Y. 2001) ............................................................................27

**Statutes**

28 U.S.C. § 1332(a) .........................................................................................................13

28 U.S.C. § 1332(c)(1)(A) ...............................................................................................13

Insurance Law § 5102(a)(1) ........................................................................................7, 14

**Other Authorities**

11 N.Y.C.R.R. § 65-3.11 ..............................................................................................7, 15

11 N.Y.C.R.R. § 65-3.16(a)(12) ..................................................................................7, 14

Fed. R. Civ. P. 9(b) ...............................................................................1, 12, 13, 15, 16

Fed. R. Civ. P. 12(b)(6) .........................................................................7, 8, 12, 13, 15

Fed. R. Civ. P. 12(c) .....................................................................................1, 7, 8, 13

Fed. R. Civ. P. 20 .......................................................................................18, 20, 24, 26

Fed. R. Civ. P. 20(a) .......................................................................................1, 3, 4, 19

Fed. R. Civ. P. 20(a)(1) ...............................................................................................19

Fed. R. Civ. P. 20(a)(2) .................................................................................... 21

Fed. R. Civ. P. 15(a) ....................................................................................... 18

## PRELIMINARY STATEMENT

Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co. (collectively "Plaintiffs" or "GEICO"), respectfully submit this memorandum of law in opposition to the motion by defendants, Yvette Davidov, D.O. ("Dr. Davidov") and S&R Medical, P.C. ("S&R") (collectively the "S&R Defendants" or "Moving Defendants"), for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and 9(b) and for severance pursuant to Fed. R. Civ. P. 20(a).

The Moving Defendants' arguments for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and 9(b) are – without even an attempt to hide it – the exact same arguments that time and again have been raised, and rejected, by this Court. Faced with ample precedent denying substantially similar motions brought by substantially similar alleged no-fault fraud rings, the Moving Defendants attempt to conflate pleading with proof, arguing that GEICO's factual allegations – which on this motion must be accepted as true – are "unsubstantiated," "erroneous," and purportedly amount to nothing more than "yelling fraud." The Moving Defendants' arguments demonstrate that either they failed to read the Complaint or they hope that the Court will not.

Contrary to the Moving Defendants' arguments, GEICO's Complaint is replete with granular factual detail laying out how each of the Defendants operated without maintaining a stand-alone practice, paying kickbacks for patient referrals, and detailing how the charges billed by each of the particular defendants, for particular healthcare services allegedly rendered, were fraudulent. GEICO's Complaint is not based on speculation, but on abundant factual detail that supports claims for relief that are "plausible" on their face. While the Moving Defendants may deny these allegations, they cannot colorably contend that the allegations in GEICO's Complaint

fail to put them on notice of the particular misconduct with which they are charged. To the extent the Complaint "yells fraud," as the Moving Defendants suggest, the Moving Defendants' conclusion is based on the factual content of the Complaint, not the verbiage contained therein.

Moreover, the Moving Defendants' motion to sever must be denied as GEICO's Complaint alleges that the Defendants' schemes were interrelated and linked through common badges of fraudulent billing and treatment protocols, including drawing from a "stock" of test data to create phony diagnostic reports. There also are common questions of law as well as overlapping facts arising from the interrelated fraudulent schemes committed against GEICO by the Defendants (including the Moving Defendants), in which the Defendants submitted thousands of bills to GEICO seeking payment for healthcare services rendered to GEICO insureds. The Complaint, which sets forth in great detail how the fraudulent treatment and billing protocols of the Defendants are virtually, if not completely, identical, provides sufficient grounds for finding the allegations against all Defendants are logically related and share common questions of law and fact. At this pre-discovery stage of the proceedings, consideration of severance is premature.

In addition, the Moving Defendants' motion for severance would undoubtedly result in a huge waste of judicial time and resources, forcing separate discovery and trial proceedings in separate cases, each of which would involve the same fraudulent billing and treatment protocols for the same bogus examinations, motion/manual muscle testing, outcome assessment testing, EMG/NCV testing and physical therapy treatment, employing the same CPT codes and the same fraudulent misrepresentations. There simply is no justification for severance at this stage of the proceedings beyond the Moving Defendants' own desire to interject procedural hurdles and delay this matter.

In sum, taking GEICO's factual allegations -- which on this motion must be accepted as true under Fed. R. Civ. P. 20(a) -- both the Moving Defendants' motion for judgment on the pleadings and motion to sever must fail.

## STATEMENT OF FACTS

GEICO respectfully refers the Court to the Complaint for the full allegations against the Moving Defendants. Briefly, however, and as set forth in GEICO's Complaint:

(i)    S&R (along with the other PC Defendants) did not maintain a stand-alone practice, is not the owner or leaseholder in the real property from which it operated, did not advertise for patients, and did not employ its own support staff. See Docket No. 1 ¶37.

(ii)   S&R operated through a network of so-called "healthcare clinic locations" located throughout the greater New York City area (the "Clinics") that were ostensibly organized to provide a range of healthcare services to Insureds at a single location, but rather, these Clinics in actuality are organized to supply "one-stop" shops for no-fault insurance fraud. See Docket No. 1 ¶38.

(iii)  S&R gained access to the Clinics by paying kickbacks to the individuals and entities that controlled the clinics and in exchange for the kickbacks, insureds could "treat" at S&R. See Docket No. 1 ¶¶40-41;

(iv)   Virtually all of the Insureds whom the S&R Defendants purported to treat were involved in relatively minor, "fender-bender" accidents, to the extent that they were involved in any actual accidents at all. Virtually none of the Insureds whom the Moving Defendants purported to treat suffered from any significant injuries or health problems as a result of the relatively minor accidents they experienced or purported to experience. See Docket No. 1 ¶44;

(v)    Even so, the Moving Defendants purported to subject virtually every Insured to virtually identical laundry lists of medically unnecessary courses of "treatment" that were provided pursuant to a pre-determined, fraudulent protocol designed to maximize the billing that they could submit through S&R to insurers, including GEICO. See Docket No. 1 ¶45;

(vi)   The Moving Defendants purported to provide their pre-determined fraudulent treatment protocol to Insureds without regard for the Insureds' individual symptoms or presentment, or – in many cases – the total absence of any actual medical problems arising from any actual automobile accidents. See Docket No. 1 ¶46;

(vii)    Each step in the Moving Defendants' fraudulent treatment protocol was designed to falsely reinforce the rationale for the previous step and provide a false justification for the subsequent step, and thereby permit the Moving Defendants to generate and falsely justify the maximum amount of fraudulent no-fault billing for each Insured. See Docket No. 1 ¶47;

(viii)   Many of the services provided through S&R were performed by independent contractors, rendering these services ineligible for no-fault benefits. See Docket No. 1 ¶¶199-207.

As set forth in granular detail in GEICO's 80-page Complaint, the GEICO insureds who supposedly received treatment by the S&R Defendants were subjected to a pre-determined fraudulent treatment protocol consisting of medically useless – and often falsified and illusory – examinations, electrodiagnostic testing, ROM/MMT tests, Outcome Assessment Testing, and physical therapy. See Docket No. 1, ¶¶50-198, and passim. These putative "treatments" were provided – to the extent that they were provided at all – to maximize the billing that could be submitted through S&R to GEICO, not to treat or otherwise benefit the GEICO insureds who purportedly were subjected to them. Id.

GEICO's allegations are supported by considerable factual detail, even at the pleading stage and in advance of discovery.   While more detail regarding the Moving Defendants' fraudulent conduct is set forth at length in GEICO's Complaint, it is worthwhile to provide a brief summary of the allegations:[1]

(i)     The Fraudulent Initial Examinations: Docket No. 1 ¶¶50-80: Upon receiving a referral, the Moving Defendants purported to provide most insureds with an initial examination. The Moving Defendants' charges for the initial examinations were fraudulent in that they misrepresented: (a) the medical necessity for the examinations; (b) the time that the Defendants spent on the initial examinations; (c) the nature and extent of the initial examinations; and (d) the results of the

---

[1] It should be noted that GEICO specifically delineates the Moving Defendants (and other Defendants) rendering of services, by defining sub-categories of Defendants, where only a specific set of Defendants were performing a type of service (i.e., the "ROM/MMT Defendants").   Where the class of Defendants is defined simply as the "Defendants" it delineates that all of the Defendants were performing those specific type of services. See Docket No. 1, ¶¶50-198.

initial examinations. The initial examinations were conducted for the sole purpose of allowing the Moving Defendants to render phony, pre-determined diagnoses for the Insureds, inasmuch as all of the Insureds received substantially identical "diagnoses" to support cookie cutter treatment plans allowing the Moving Defendants to create a false basis on which to bill GEICO and other insurers for the other Fraudulent Services.

(ii)     The Fraudulent Follow-Up Examinations: Docket No. 1 ¶¶ 81-105: In addition to the fraudulent initial examinations, the Moving Defendants purported to provide virtually every Insured with numerous putative follow-up examinations. The Moving Defendants charges for the follow-up examinations were fraudulent in that they misrepresented: (a) the medical necessity for the putative examinations; (b) the time that the Moving Defendants spent on the examinations; (c) the nature and extent of the examinations; (d) the results of the examinations; and (e) the results of the follow up examinations. The follow up examinations were conducted for the sole purpose of allowing the Moving Defendants to render phony, pre-determined diagnoses for the Insureds, inasmuch as all of the Insureds received substantially identical "diagnoses" to support cookie cutter treatment plans allowing the Moving Defendants to create a false basis on which to bill GEICO and other insurers for the other Fraudulent Services.

(iii)    The Outcome Assessment Testing: Docket No. 1 ¶¶ 106-116:  As part of the Moving Defendants' fraudulent treatment protocol, the Moving Defendants purported to provide medically-unnecessary Outcome Assessment Testing to many Insureds.  The Moving Defendants misrepresented: (a) that the Outcome Assessment Testing was medically necessary; (b) the nature and extent of the Outcome Assessment Testing; (c) the charges for the Outcome Assessment Testing; and (d) the individual who performed the Outcome Assessment Testing.

(iv)    The ROM/MMT Tests: Docket No. 1 ¶¶ 117-142:  As part of the Moving Defendants' fraudulent treatment protocol, the Moving Defendants purported to provide medically-unnecessary Range of Motion ("ROM") and Manual Muscle Testing ("MMT") Tests to many Insureds.   The Moving Defendants misrepresented: (a) that the ROM/MMT Tests was medically necessary; (b) the type of services being provided to the insured; (c) the charges for the ROM/MMT Tests; and (d) the individual who performed the ROM/MMT Tests.

(v)     The Fraudulent Electrodiagnostic Testing:  Docket No. 1 ¶¶ 143-193: Based upon the fraudulent, pre-determined "diagnoses" provided during the initial examinations and follow-up examinations, ROM/MMT tests and Outcome Assessment Testing, the Moving Defendants purported to subject most Insureds to a series of medically unnecessary and useless NCV and EMGs testing, (collectively the "electrodiagnostic" or "EDX" tests).  The Moving Defendants mispresented: (a) the medical necessity of the EDX tests; (b) the nature and extent of the EDX tests; (c) the cost of the EDX tests; and (d) whether the services were performed in the first instance – in that the Moving Defendants often submitted

billing and reports in which biologically impossible data was reported. Further, in virtually every case, the Defendants performed NCV testing on far more nerves than required under the Recommended Policy and performed EMG testing on the same muscles and nerves for each Insured regardless of individual presentment, also in contravention of the Recommended Policy. The Defendants purported to provide and/or perform the EDX testing to Insureds as part of their pre-determined, fraudulent treatment protocol designed to maximize the billing that they could submit for each Insured.

(vi)     The Fraudulent Physical Therapy Treatments: Docket No. 1 ¶¶ 194-198: In addition to the other Fraudulent Services that the Defendants purported to provide, the Defendants purported to subject most Insureds to a series of medically unnecessary physical therapy treatments predicated on the boilerplate diagnoses they provided to the Insureds following the initial and follow-up examinations, as well as the medically useless and fraudulent EDX Tests that they purported to perform and/or provide. The Defendants misrepresented that the physical therapy treatments were medically necessary and falsely recommended that virtually every Insured receive at least three physical therapy treatments per week for four weeks, regardless of symptoms or complaints.

GEICO also alleges that NCV reports submitted to GEICO by the S&R Defendants were identical to reports relating to other patients issued by them, other PC Defendants and other medical providers. Not only are the reports fraudulent per-se because it would have been biologically impossible for the test results to have been identical, but these facts and circumstances in and of themselves support the conclusion of an interrelated scheme among all of the Defendants. Docket No. 1 ¶¶ 168-179.

To support their fraudulent charges, the Moving Defendants systematically submitted or caused to be submitted hundreds of NF-3 forms, HCFA-1500 forms, and treatment reports through S&R to GEICO seeking payment for the Fraudulent Services for which the Moving Defendants were not entitled to receive payment, because the services were performed by independent contractors (Docket No. 1 ¶¶ 199-207).

The NF-3 forms, HCFA-1500 forms, and treatment reports were false and misleading in the following material respects:

6

(i) The NF-3 forms, HCFA-1500 forms, and treatment reports submitted by and on behalf of the Moving Defendants uniformly misrepresented to GEICO that the Fraudulent Services were medically necessary and, in many cases, misrepresented to GEICO that the Fraudulent Services actually were performed. In fact, the Fraudulent Services were not medically necessary, in many cases were not actually performed, and were performed – to the extent that they were performed at all – pursuant to predetermined fraudulent protocols designed solely to financially enrich the Moving Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

(ii) The NF-3 forms, HCFA-1500 forms, and treatment reports submitted by and on behalf of the Moving Defendants uniformly misrepresented and exaggerated the level of the Fraudulent Services and the nature of the Fraudulent Services that purportedly were provided.

(iii) The NF-3 forms, HCFA-1500 forms, and treatment reports submitted by and on behalf of the Defendants uniformly misrepresented to GEICO that S&R was in compliance with all material licensing laws and, therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12). In fact, S&R was not in compliance with all material licensing laws in that they paid kickbacks for patient referrals.

(iv) The NF-3 forms, HCFA-1500 forms, and treatment reports submitted by and on behalf of the Defendants uniformly misrepresented to GEICO that S&R was eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.11 for the services that supposedly were performed. In fact, S&R was not eligible to seek or pursue collection of No-Fault Benefits for many of the services that supposedly were performed because the services were not provided by S&R's employees.

Docket No. 1 ¶¶ 208-209.

## ARGUMENT

## I.   The Standards on a Motion for Judgment on the Pleadings

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is treated under the same standard as a motion to dismiss under Rule 12(b)(6). Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). Pursuant to Rule 12(b)(6), dismissal is appropriate if the plaintiff has failed to offer sufficient factual allegations to make the asserted claim plausible on its face. Sharkey v. Quarantillo, 541 F.3d 75, 92 (2d Cir. 2008). Thus, a court should not dismiss

7

a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "plausibility" requirement does not mandate a universal standard of heightened fact pleading. Petrucelli v. Hasty, 605 F. Supp. 2d 410, 417 (E.D.N.Y. 2009). In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, noting that "[d]etermining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

In this context, a court considering a Rule 12(b)(6) motion must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co., 517 F.3d 104 (2d Cir. 2008) (internal citation omitted). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." FragranceNet.com, Inc. v. FragranceX.com, Inc., 679 F. Supp. 2d 312, 324 (E.D.N.Y. 2010)(internal quotations and citations omitted).

## II. The Moving Defendants' Motion Pursuant to Fed. R. Civ. P. 12(c) Should be Denied in its Entirety

Distilled to their essence, the Moving Defendants' arguments for judgment on the pleadings boil down to the following:

(i)    A contention that GEICO's allegations are implausible, and fail to meet the Twombly and Iqbal standards, because they supposedly amount to mere legal conclusions without any factual basis. See Moving Defendants' Memorandum of Law ("Def. Mem.") at pp. 4-6;

(ii)   A more general contention that GEICO has failed to plead its fraud-based claims against the Moving Defendants with the requisite particularity. See id. at pp. 6-9; and

(iii)  A contention that, in the event that GEICO is granted leave to replead, the Court should require GEICO to file a "RICO Statement". See id. at pp. 15-17.

8

As discussed below, none of these arguments have any merit and – indeed – substantially similar arguments repeatedly have been raised in analogous cases by similar alleged no-fault insurance fraud rings, and consistently have been rejected by this Court and other Courts within this District.

## A.    GEICO's Complaint Meets the <u>Twombly-Iqbal</u> Standards

Relying on mischaracterizations of GEICO's allegations and specious "questions" that are, at best, suited for discovery rather than a motion aimed at a pleading, the Moving Defendants contend that GEICO has failed to plead any plausible claims against them. See Def. Mem. at pp. 4-6. The Moving Defendants, however, ignore the pages and pages of factual detail describing their wrongdoing and essentially seek to force GEICO to prove their claims at the pleading stage. While the Moving Defendants may have some "questions" regarding the Complaint that they are entitled to explore through discovery, those questions do not mean that the Complaint itself is so vague that it fails the "plausibility" standard. Id.

Indeed, it cannot genuinely be disputed that GEICO's Complaint contains more than sufficient detail to put the Moving Defendants on notice of the particular misconduct with which they are charged. In particular, GEICO's Complaint alleges, in part, the following:

(i)     S&R (as one of the PC Defendants) did not maintain a stand-alone practice, is not the owner or leaseholder in the real property from which it operated, did not advertise for patients, and did not employ their own support staff. See Docket No. 1, ¶37.

(ii)    S&R operated through a network of so-called "healthcare clinic locations" that are located throughout the greater New York City area (the "Clinics") that were ostensibly organized to provide a range of healthcare services to Insureds at a single location, but rather, these Clinics in actuality are organized to supply "one-stop" shops for no-fault insurance fraud. See Docket No. 1, ¶38.

(iii)   S&R gained access to the Clinics by paying kickbacks to the individuals and entities that controlled the clinics and in exchange for the kickbacks, insureds could "treat" at S&R. See Docket No. 1, ¶¶40-41;

(iv)   Virtually all of the Insureds whom the S&R Defendants purported to treat were involved in relatively minor, "fender-bender" accidents, to the extent that they were involved in any actual accidents at all. Virtually none of the Insureds whom the Defendants purported to treat suffered from any significant injuries or health problems as a result of the relatively minor accidents they experienced or purported to experience. See Docket No. 1, ¶44;

(v)   Even so, the Moving Defendants purported to subject virtually every Insured to virtually identical laundry lists of medically unnecessary courses of "treatment" that were provided pursuant to a pre-determined, fraudulent protocol designed to maximize the billing that they could submit through S&R to insurers, including GEICO. See Docket No. 1, ¶45;

(vi)   The Defendants purported to provide their pre-determined fraudulent treatment protocol to Insureds without regard for the Insureds' individual symptoms or presentment, or – in many cases – the total absence of any actual medical problems arising from any actual automobile accidents. See Docket No. 1, ¶46;

(vii)   Each step in the Defendants' fraudulent treatment protocol was designed to falsely reinforce the rationale for the previous step and provide a false justification for the subsequent step, and thereby permit the Defendants to generate and falsely justify the maximum amount of fraudulent no-fault billing for each Insured. See Docket No. 1, ¶47;

(viii)   Many of the services provided through S&R were performed by independent contractors, rendering these services ineligible for no-fault benefits. See Docket No. 1, ¶¶199-207.

In this context, the Complaint plainly satisfies Twombly and Iqbal. Despite the efforts of the Moving Defendants to portray the above allegations as lacking sufficient detail, the factual allegations contained in the Complaint are plainly sufficient at the pleading stage to allow this Court to draw the reasonable inference that the Moving Defendants are liable for the misconduct alleged. See, Twombly, 550 U.S at 570. In fact, Moving Defendants' entire Twombly argument is based on their "asking" of rhetorical unsubstantiated questions, suggesting GEICO's allegations could be wrong. However, there is not one iota of support that the Moving

10

Defendants' "questions" are determinative at this stage of the litigation.  Nor do the Moving Defendants offer any real explanation as to how GEICO's Complaint does not meet the Twombly standard. Def. Mem. at pp. 4-6.

For example, in addition to the above well pled allegations, the Complaint details in painstaking fashion the S&R Defendants' false representations regarding: (i) the medical necessity of its services, to the extent that they were conducted at all; (ii) the invalidity of EMG/NCV tests, when in many instances they were not performed at all, and in many instances the medical reports were fabricated to reflect testing allegedly performed; and (iii) whether the services provided were performed by their employees, when in fact they were performed by independent contractors, making the services non-reimbursable. See Docket No 1, ¶¶ 50-207. Moreover, the Complaint includes as an exhibit, a detailed chart identifying fraudulent particular claims that the S&R Defendants submitted to GEICO, including the identification of claim numbers, dates of alleged services, billed amounts, CPT codes used, and dates of mailing of the bills. See Docket No. 1, Exhibit "7".  By any measure, the Complaint details in granular fashion how the services purportedly provided by the Moving Defendants were fraudulent in nature. Additionally, the Complaint painstakingly details how the services purportedly provided by the Moving Defendants were not reimbursable under the applicable Regulations. See Docket No. 1, ¶¶50-198, and passim.

The Moving Defendants, essentially admitting their motion lacks merit, make a seemingly derisive reference to GEICO's "string of successes in this courthouse" -- lest GEICO be the first to point to the great weight of authority denying substantially similar motions by similar alleged no-fault fraud rings -- but the Moving Defendants unsurprisingly fail to cite or mention any of the plethora of pertinent cases.  See Def. Mem. at p. 2.  It is, therefore,

worthwhile to note the many cases in which this Court and other Courts within this District have refused to dismiss virtually analogous claims against medical providers and their purported owners seeking dismissal under Rule 12(b)(6) and Rule 9(b). See, e.g., Liberty Mut. Ins. v. Excel Imaging, P.C., 879 F. Supp.2d 243 (E.D.N.Y. 2012); GEICO v. Hollis Med. Care, P.C., 2011 U.S. Dist. LEXIS 130721 (E.D.N.Y. 2011); Allstate Ins. v. Etienne, 2010 U.S. Dist. LEXIS 113995 (E.D.N.Y. 2010);[2] State Farm v. Cohan, 2009 U.S. Dist. LEXIS 125653 (E.D.N.Y. 2009); Allstate Ins. v. Valley Physical Med. & Rehab., P.C., 2009 U.S. Dist. LEXIS 91291 (E.D.N.Y. 2009); Allstate Ins. v. Ahmed Halima, 2009 U.S. Dist. LEXIS 22443 (E.D.N.Y. 2009); State Farm v Liguori, 589 F. Supp.2d 221 (E.D.N.Y. 2008); State Farm v. CPT Med. Servs., P.C., 2008 U.S. Dist. LEXIS 71156 (E.D.N.Y. 2008); State Farm v. Kalika, M.D., et al., 2006 WL 6176152 at *9-19 (E.D.N.Y. 2006). See also State Farm v. Fayda, 2015 WL 4104840 at *2 (S.D.N.Y. 2015).[3]

The Moving Defendants not only ignore the substantial precedent involving no-fault fraud and RICO claims, but improperly conflate pleading with proof, in that they contend – because they dispute the validity of GEICO's allegations – GEICO has not pleaded sufficient facts to state a claim. This is not the standard on a motion for judgment on the pleadings pursuant to Rule 12(c).[4] See e.g., Globaltex Group, Ltd. v. Trends Sportswear, Ltd., 2009 WL

---

[2] Indeed, counsel for the S&R Defendants knows first-hand of these decisions because he has been counsel in a number of cases (including by way of example, the Etienne action) where the same arguments that have been advanced here have been rejected.

[3] Given the abundant precedent, Judges of this Court have not been shy about advising defendants that submission of a motion to dismiss under Rules 12(b)(6) and/or 9(b) (with similar arguments to the ones advanced herein) could warrant possible sanctions as the case law is well settled in this area. See GEICO v. Koyfman, Docket No. 10-CV-5869 (ENV), Minute Entry 4/29/11 (Judge Vitaliano warned defendants that his preliminary analysis suggested that the motions were frivolous, and noted financial sanctions would be imposed if the motions proved frivolous); See also GEICO v. Yutsis, et al., Docket No. 11-CV-631 (FB), Minute Entry 6/3/11, and Docket No. 15 (Judge Block indicated he was likely to deny defendants' proposed motion to dismiss, which defendants' then declined to file); GEICO v. Ajudua, et al., Docket No. 15-CV-5199 (MKB), Minute Entry 11/30/15 (Judge Brody indicated while defendants were permitted to file motion to dismiss based on Rule 12(b)(6), GEICO could move for sanctions).

[4] See Allstate Ins. v. Smirnov, et al., 2014 WL 4437287 (E.D.N.Y. 2014), adopted by 12-CV-1246 (CBA)(Docket No. 222)(granting summary judgment to insurer based on defendants' participation in no-fault fraudulent scheme).

1270002 at * 4 (E.D.N.Y. 2009)("In reviewing a Rule 12(b)(6) motion, the task of the court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'")(internal citation omitted).

Second, even assuming – for argument's sake – that any of the services purportedly provided by the Moving Defendants were in fact legitimate, as they claim, this does not invalidate GEICO's allegations in its Complaint and is merely just a question of fact that cannot be determined at this stage.

Accordingly, GEICO's Complaint meets the <u>Twombly-Iqbal</u> requirements, and the Moving Defendants' motion should be denied.[5]

## B.    GEICO's RICO Claims are Pled with the Requisite Specificity

The Moving Defendants deploy a familiar tactic in seeking dismissal of GEICO's RICO claims – namely, the Moving Defendants state highly generalized rules of fraud pleading, but ignore the more specific precedent that has been developed by this and other Courts within the Second Circuit when dealing with large-scale fraudulent no-fault insurance schemes.   Then they argue that GEICO has not met the more generalized pleading standard with respect to Rule 9(b), and that the RICO claims therefore must be dismissed.

In particular, the Defendants contend that the Complaint supposedly fails because GEICO described the Moving Defendants in general along with the other Defendants and did not specify "who did what, who said what, or who knew what at what time or who prepared what." <u>See</u> Def.

---

[5] The Defendants contend that, if GEICO's civil RICO claims are dismissed, the Court should decline to exercise supplemental jurisdiction over GEICO's state law claims. <u>See</u> Def. Mem. at p. 14-15. This argument lacks merit. <u>First</u>, and as discussed above, GEICO's civil RICO claims are not subject to dismissal. <u>Second</u>, even if GEICO's civil RICO claims were dismissed – which should not occur – the Court nonetheless would have diversity jurisdiction over GEICO's remaining claims. <u>See e.g.</u> 28 U.S.C. § 1332(c)(1)(A); <u>McGee v. State Farm Mut. Auto. Ins. Co.</u>, 684 F. Supp. 2d 258 (E.D.N.Y. 2009). In fact, the satisfaction of the diversity requirements under Section 1332(a) is determined "as of the date of the complaint . . . ."   <u>Scherer v. Equitable Life Assur. Soc'y of the United States</u>, 347 F.3d 394, 397 (2d Cir. 2003).

Mem. at p. 7. Specifically, and as set forth more fully above, the Complaint contains numerous facts and supporting allegations regarding *the Moving Defendants'* submission of inflated billing through S&R for medically useless, illusory, or otherwise unreimbursable examinations, EDX tests, ROM/MMT tests, Outcome Assessment Testing and physical therapy. <u>See</u> Statement of Relevant Facts, <u>supra</u>; <u>See also</u> Docket No. 1, ¶¶50-207.

Simply put, the Moving Defendants are wrong and have been put on notice of all the claims against them. First, the Complaint specifies the misrepresentations and acts of fraudulent concealment in each and every one of the Moving Defendants' bills. To wit: (i) the Moving Defendants uniformly misrepresented to GEICO that the Fraudulent Services were medically necessary and, in many cases, misrepresented to GEICO that the Fraudulent Services actually were performed; (ii) the NF-3 forms, HCFA-1500 forms, and treatment reports submitted by and on behalf of the Moving Defendants uniformly misrepresented and exaggerated the level of the Fraudulent Services and the nature of the Fraudulent Services that purportedly were provided; (iii) the NF-3 forms, HCFA-1500 forms, and treatment reports submitted by and on behalf of the Defendants uniformly misrepresented to GEICO that S&R was in compliance with all material licensing laws and, therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12); and (iv) the NF-3 forms, HCFA-1500 forms, and treatment reports submitted by and on behalf of the Defendants uniformly misrepresented to GEICO that S&R was eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.11 for the services that supposedly were performed. <u>See</u> Docket No. 1, ¶ 208-209 and <u>passim</u>.

Second, GEICO has attached, as Exhibit "7" to the Complaint, a chart identifying a large representative sample of the fraudulent bills that *the Moving Defendants* caused to be mailed to

GEICO, by claim number, date of service, type of service covered by the bills, amount billed, and date of mailing. This chart, in conjunction with granular allegations as to the fraudulent medical services provided by the Moving Defendants, is more than sufficient to plead with specificity the allegations against the Moving Defendants. <u>See</u> Docket No. 1, ¶ 50-209 and <u>passim</u>.

Not surprisingly, what is not mentioned by the Moving Defendants is that Courts within this District consistently have held that similar pleadings in analogous actions meet the particularity requirements of Rule 9(b). <u>See</u>, <u>e.g.</u>, <u>Excel Imaging</u>, <u>supra</u>, 879 F. Supp. 2d at 273; <u>Hollis Med. Care</u>, <u>supra</u>, at * 23 - 26; <u>Etienne</u>, <u>supra</u>, 2010 U.S. Dist. LEXIS 113995 at * 25 - 30; <u>Cohan</u>, <u>supra</u>, at * 13 - 15 (E.D.N.Y. 2009); <u>Valley Physical Med. & Rehab.</u>, <u>supra</u>, 2009 U.S. Dist. LEXIS 91291 at * 26 - 27; <u>Halima</u>, <u>supra</u>, 2009 U.S. Dist. LEXIS 22443 at * 17 - 20; <u>Kalika</u>, <u>supra</u>, at * 9 - 19; <u>CPT Med. Servs., P.C.</u>, <u>supra</u>, 375 F. Supp. 2d at 153-154; <u>AIU Ins. Co. v. Olmecs Med. Supply, Inc.</u>, 2005 U.S. Dist. LEXIS 29666 at * 32 - 42 (E.D.N.Y. 2005). <u>See also</u> <u>Fayda</u>, 2015 WL 4104840 at *2.[6]

For example, in <u>Etienne</u>, Judge Townes denied Defendants' motion to dismiss under Rule 9(b), finding that Allstate's Complaint, virtually identical to the one herein, satisfied the requirements under Rule 9(b). "In complex civil RICO actions involving multiple defendants, Rule 9(b) does require that the 'temporal or geographic particulars of each mailing made in furtherance of the fraudulent scheme be stated with particularity,' but only that the 'plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme.'" <u>See also</u> <u>Olmecs</u>, 2005 WL 3710370 at *11.

---

[6] In fact, other Circuits have noted that dismissing a Complaint based on Rule 9(b) in similar cases of insurance fraud is dangerous and in fact aids the fraudulent parties. <u>See e.g.</u>, <u>State Farm Mut. Auto. Ins. Co. v. Makris</u>, 2002 U.S. Dist. LEXIS 7567 at * 8 - * 11 (E.D. Pa. 2002)(denying alleged insurance fraud ring's motion to dismiss pursuant to Rules 12(b)(6) and 9(b), and observing that "courts should be sensitive to the fact that application of the Rule 9(b) prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud. They should also respect the general simplicity and flexibility of the Federal Rules of Civil Procedure.")(Internal quotations and citation omitted).

Similarly, in this case, despite Moving Defendants' arguments, GEICO has identified those responsible for the fraudulent acts and set forth specific details regarding the Moving Defendants' respective fraudulent schemes. See Docket No. 1, ¶¶ 50-209. GEICO has also attached to the Complaint as Exhibit "7," a chart providing a large, detailed representative sampling of the alleged fraudulent services, billing and mailings. See e.g. Halima, 2009 WL 750199 at *5 (holding that similar pleadings in RICO actions meet the particularity requirements of Rule 9(b)).

Likewise, in Liguori, Judge Joseph Bianco denied defendants' motion to dismiss under Rule 9(b) as the Complaint pled with particularity the fraudulent scheme perpetrated by the defendants, in a matter similar to the one herein. Critically, Judge Bianco noted the complaint satisfied Rule 9(b) as it set forth in detail: (i) the categories of insurance claims that defendant allegedly knowingly submitted in an attempt to inflate the payments owed by plaintiff; (ii) the complaint alleges that defendants used billing codes which "misrepresent[ed] and exaggerate[d] the level of services provided in order to inflate the charges" and unbundled billing codes; (iii) the defendants knew that these bills were misrepresentations; and (iv) attached to the complaint was a chart detailing the fraudulent claims. Judge Bianco noted that since the purpose of Rule 9(b) is to give defendants fair notice, the time and place of each statement is not necessary to have been pled. Id. at 236-239. Additionally, as with the scheme herein, as the scheme is an ongoing scheme (in that the Moving Defendants continue to attempt to collect on the fraudulent claims), Rule 9(b) does not require that each specific misrepresentation be identified. See Lehman Bros. Comm. Corp. v. Minmetals Int 'l Non–Ferrous Metals Trading Co., 1995 WL 608323, at *2 (S.D.N.Y. Oct. 16, 1995) (finding that "[w]here the misstatements are alleged to have occurred over a period of time ... the pleadings are not required 'to provide the date and

time of every communication.'" However, as noted, GEICO has provided a detailed chart, annexed to the Complaint as Exhibit "7" which list voluminous, specific claims that GEICO alleges are fraudulent. That level of specificity is sufficient to survive a motion to dismiss.

Accordingly, the Moving Defendants' motion should be denied.

C.     **There is No Need for a RICO Statement in the Present Case**

Though this Court has frequently been called upon to adjudicate RICO cases involving allegations of no-fault fraud that are more or less the same as those set forth in the present Complaint, RICO statements almost never have been required. There is no requirement in the Eastern District of New York that a RICO statement be filed. See Hollis Med. Care, P.C., 2011 U.S. Dist. LEXIS 130721 at * 33 (rejecting similar request for RICO statement, and noting that "It is not this Court's practice to require plaintiffs asserting civil RICO claims to file RICO statements as a matter of course."); See also New York State Catholic Health Plan, Inc. v. Academy O & P Associates et al., 15-CV-3298 (JBW)(VMS)(Docket No. 37)(denying defendants' request for a RICO statement from Plaintiff).

Leaving aside the Moving Defendants' conclusory assertion that a RICO statement is required in the present case to "sharpen and clarify the issues, confirm the completeness of the Complaint's assertions or highlight it [sic] pleading deficiencies", the Moving Defendants have not set forth any of the issues that supposedly require clarification, nor have they identified any assertions in the Complaint which are of questionable "completeness." Similarly, the Moving Defendants have not identified any case from this Court, save for one from Judge Hurley from 2007, that have required a RICO statement, because they know they cannot.

The Moving Defendants' obvious purpose in bringing this motion, and seeking a RICO statement, is delay. If, as the Moving Defendants allege, GEICO's allegations are erroneous, the

Moving Defendants should want to proceed with discovery to address the merits of the allegations, rather than mire the case with procedural obstacles. At bottom, the Moving Defendants have not set forth any colorable basis for a RICO statement.

**III.     To the Extent That the Court Finds a Defect in the Complaint, GEICO Requests Leave to Replead**

GEICO's Complaint adequately alleges claims for common law and RICO violations against the Moving Defendants. To the extent, however, that the Court finds the Complaint to be inadequate in any manner, GEICO respectfully requests leave pursuant to Fed. R. Civ. Proc. 15(a) to serve an amended complaint, as it believes that any such inadequacies would be merely issues of technical pleading rather than substantive defects in the claims. When a party requests leave to amend its complaint, permission generally should be freely granted. Anderson News, L.L.C. v. AM Media, Inc., 680 F.3d 162, 185 (S.D.N.Y. 2012). Furthermore, there is no legitimate basis to suggest that such an amendment would be futile or that the Moving Defendants would be prejudiced. See Oliver Schools, Inc. v. Foley, 930 F.2d 248, 253 (2d Cir.1991) ("Where the possibility exists that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course").

**IV.     The S&R Defendants Motion to Sever Should Be Denied**

In another obvious attempt to delay this matter and mire the case with procedural obstacles, the Moving Defendants alternatively seek severance pursuant to Fed. R. Civ. P. 20. The Moving Defendants' arguments that the allegations against them must be severed and are improperly joined are meritless. The Federal Rules give courts broad discretion to allow parties to be joined if the essential facts of the allegations are logically connected so that considerations of judicial economy and fairness dictate that the issues be resolved in one lawsuit.

18

Here, GEICO's Complaint alleges that the Defendants' fraud schemes are interrelated as the Moving Defendants' fraudulent billing and treatment protocols are virtually, if not completely, identical to the other Defendants. These fraudulent treatment and billing protocols involve the same examinations, the same range of motion/manual muscle testing, the same outcome assessment testing, the same EMG/NCV testing and the same physical therapy treatment, and include the Defendants drawing from a "stock" of NCV test data that they used to cut and paste together phony reports. Moreover, each of the Defendants submitted billing and reports to GEICO for the same types of medical services purported provided to insureds, as noted above, that contain: (i) the same CPT codes for services purportedly rendered to GEICO insured; (ii) the same billing for the same medical services; and (iii) the same fraudulent misrepresentations.

A. **The Standards on A Motion to Sever Pursuant to Rule 20(a)**

Fed R. Civ. P. 20(a) provides that parties may be joined in an action if any right to relief is asserted against them with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all parties will arise in the action.

In determining whether claims relate to, or arise out of, the same "transaction" or "occurrence" under Rule 20(a), "courts are to look to the logical relationship between the claims and determine 'whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" United States v. Aquavella, 615 F.2d 12, 22 (2d Cir.1979); See also Abraham v. American Home Mortgage Servicing, Inc., 2013 WL 2285205 at * 3 (E.D.N.Y. 2013). Phrased another way, Courts in this Circuit have held the phrase "same transaction or occurrence" to include all logically related claims asserted against different parties. See e.g. Fong v. Rego Park

19

Nursing Home, 1996 WL 468660 (E.D.N.Y. 1996); Blesedell v. Mobil Oil Co., 708 F.Supp 1408, 1421 (S.D.N.Y. 1989).

Rule 20(a) should be liberally interpreted to "enable the court to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding." Luparello v. Incorporated Village of Garden City, 290 F. Supp. 2d 341 (E.D.N.Y 2003). In determining whether to sever, courts generally consider, in addition to the factors set forth in Rule 20(a): (i) "whether settlement of the claims or judicial economy would be facilitated; (ii) whether prejudice would be avoided if severance were granted; and (iii) whether different witnesses and documentary proof are required for the separate claims." See Crown Cork & Seal Co., Inc. Master Retirement Trust v. Credit Suisse First Boston Corp., 288 F.R.D. 331, 333 (S.D.N.Y. 2013); Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A., 596 F.Supp.2d 821, 826 (S.D.N.Y.2008). Courts have cautioned that "severance is a procedural device to be employed only in exceptional circumstances." Laureano v. Goord, No. 06–CV–7845, 2007 WL 2826649 at *8 (S.D.N.Y. 2007).

B. **GEICO's Allegations in the Complaint are Logically Connected and Share Common Questions of Law and Fact**

At this stage of the litigation, under Rule 20, GEICO's factual allegations must be accepted as true. See Viada v. Osaka Health Spa, Inc., 235 F.R.D. 55, 61 (S.D.N.Y. 2006). Further, prior to discovery, it is premature to decide on severance where GEICO's Complaint makes clear that there are common questions of law as well as overlapping facts arising from interrelated fraudulent schemes committed by the Moving Defendants, the other PC Defendants, and their purported owners.

GEICO's Complaint alleges that the Defendants' fraud schemes are interrelated as the Moving Defendants' fraudulent billing and treatment protocols are virtually, if not completely,

identical to the other Defendants. Tellingly, GEICO has identified numerous claim files (Complaint at ¶176) in which the Defendants have submitted duplicate NCV wave match billing and reports drawn from a stock of test data.[7] As detailed in the Complaint, part and parcel of the fraudulent schemes was for the Defendants, including the Moving Defendants, to create and submit to GEICO NCV reports containing waveforms and numerical data that were duplicated across several patients, presumably by copying the data from a pre-existing NCV report for one patient, then pasting it into NCV reports created for new patients. These matches confirm that the Defendants drew from a "stock" of NCV test data that they randomly assembled and combined with the insureds' claim information to create the impression that the NCV reports represented valid test results, when in fact they did not. Complaint at ¶177. See also Docket No. 1, ¶¶167-179.[8] Further, GEICO is aware that the phony NCV reports identified to date (including at least one billed by the Moving Defendants) are primarily associated with the names of the same two "treating doctors", further supporting the allegation that the Defendants are part of interrelated schemes.

The Defendants' fraudulent schemes also revolve around the same common questions of law and fact as GEICO alleges that the services purportedly provided by the Defendants: (i) were the product of illegal kickback arrangements with various other individuals and entities; (ii) were not medically necessary, in many cases were not actually performed, and were performed – to

---

[7] In addition to the specific examples described above, GEICO has identified many other instances in which the PC Defendants created phony NCV test results by cutting and pasting data and waveforms from pre-existing reports into the reports for new patients. Docket No. 1, ¶178.

[8] Moving Defendants argue that the allegations in the Complaint do not arise from the same "Transaction," however, it should be noted that "Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." Moore v. New York Cotton Exchange, 270 U.S. 593 (1926); See also Jones v. Ford Motor Credit Co., 358 F.3d 205 (2nd Cir. 2004). While there is no rigid rule as to what comprises the same series of transactions, "the Rule's [Fed. R. Civ. P. 20(a)(2)] requirements are to be liberally interpreted." City of New York v. Joseph L. Balkan, Inc., 656 F. Supp. 536, 549 (E.D.N.Y. 1987). "Courts within this Circuit repeatedly have interpreted the phrase 'same transaction' to encompass 'all logically related claims' and have counseled that such determinations are to be made on a case-by-case basis." Deskovic v. City of Peekskill, 673 F. Supp. 2d 154, 166 (S.D.N.Y. 2009).

the extent that they were performed at all – pursuant to pre-determined fraudulent protocols identical across the Defendants; (iii) uniformly misrepresented and exaggerated the level of services and the nature of the services that purportedly were provided; and (iv) the PC Defendants, including S&R, were not eligible to seek or pursue collection of No-Fault Benefits for many of the services that supposedly were performed because the services were not provided by the PC Defendants' employees. Docket No. 1, ¶¶50-209.

Even a cursory review of the Complaint shows the interrelationships among the Moving Defendants and the other Defendants, as well as the common questions of law and fact. For example, as the treatment and billing protocols are identical, the issue as to the validity and necessity of such services is identical across all Defendants. Likewise, the misrepresentations made by the Defendants and GEICO's reliance on the same, are identical among all Defendants.[9]

This Court has already found arguments similar to those advanced by the Moving Defendants unpersuasive and has denied motions to sever involving similar no-fault fraudulent schemes. For example, in <u>Allstate Ins. v. Khaimov, et al.</u>, 11-CV-2391 (E.D.N.Y.)(JG)(JMA), Judge Gleeson denied the defendants' motion to sever where, as here, the schemes described were generally identical, clearly logically related and there existed an efficiency in keeping the claims together in one case. <u>Id</u>. at February 16, 2012 Transcript, pp. 48-50. As in <u>Khaimov</u>, this is not a case where the Complaint tenuously ties together a litany of parties (as the Moving Defendants would have you believe) – rather, the Defendants are tied together <u>via</u> the same factual allegations and legal issues. <u>See also</u> <u>Travelers Indemnity Co. v. Valley Psychological, P.C.</u>, 2012 WL 3614431 (E.D.N.Y. 2012)

---

[9] In addition, it is likely that discovery will uncover various links and relationships among the Defendants as it is believed that the same individuals, both medical professionals and unlicensed technicians, performed many of the electrodiagnostic services across the various PC Defendants. It should be noted that fraud actions typically involve circumstantial evidence and therefore discovery is generally required to uncover fully nature of conspiracies. <u>See e.g.</u> <u>Bank Leumi Trust Co. of New York v. Istim, Inc.</u>, 892 F.Supp 478, 482 (S.D.N.Y. 1995).

In Khaimov, the complaint included approximately 40 defendants, centered around various corporations providing durable medical equipment to insureds, all of which, like herein, submitted identical bills and reports to GEICO, involving the same type of services provided, CPT codes reflecting the services provided, and misrepresentations made by the defendants. See Khaimov, Docket No. 1, passim. As the case with the Complaint herein, the Khaimov complaint did not allege that the individual corporate defendants acted in concert or conspired with one another or allege that they were jointly and severally liable. Id. Docket No. 1, passim.

In rejecting the defendants' argument that the allegations did not arise from the same transaction, Judge Gleeson held that the defendants were properly joined as: (i) the defendants used the same templated documents and CPT codes; (ii) the schemes were "generally identical" making them clearly logically related; and (iii) there would be nothing but efficiency in keeping the claims together in one case. Id. at February 16, 2012 Transcript, p. 49. Judge Gleeson, in citing United Mine Workers v. Gibbs, 383 U.S. 715, 724 (1966) noted under the Federal Rules the impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties and therefore, joinder is encouraged. While Judge Gleeson did not rule out revisiting severance at a later time, he determined there was no need, pre-discovery to sever the parties based on efficiency and economy. Id. at February 16, 2012 Transcript, pp. 49-50.

Likewise, in Gerace v. Cliffstar Corporation, 2009 WL 5042621 (S.D.N.Y. 2009), the court denied defendant's motion to sever finding plaintiffs' complaint satisfied the requirements under Rule 20. In Gerace, the court found this despite individual claims by separate plaintiffs regarding their respective disabilities and terminations. There, the plaintiffs claimed disability under the ADA, all claimed to have been denied accommodations and received the same letters informing of layoffs, but the Court found the claims were logically related and contained

23

common questions of law and fact. Id. at *2. In addition, the court in Gerace noted that since the claims were brought under the same federal and state statutes, the same legal standards would apply to each claim and there would be some common witnesses, therefore, severance would not be warranted. Id. at *3.

The case at bar, akin to Gerace, involves allegations against all Defendants under the same federal and state statutes and regulations, based on virtually identical fraudulent schemes, which include overlapping medical services rendered to insureds, virtually identical billing and treatment protocols among the Defendants, This case will inevitably involve overlapping discovery, including, fact and expert witnesses. See also Fong, supra at *2-3 (denying severance based on common questions of law and fact despite plaintiffs' distinguishable claims); Green v. Beer, 2009 WL 3401256 at *7-9 (S.D.N.Y. 2009)(denying severance where common issues of law included whether defendants made misrepresentations which plaintiffs relied upon).

The Moving Defendants, in seeking severance, grossly exaggerate the alleged complications if this matters proceeds in a single action. In fact, only the Moving Defendants and 3 others (of the 13 named defendants) have appeared in this matter. See Docket Nos. 22-24 The remaining defendants, with the exception of Gracia Mayard, are currently in default and Mayard was recently served in federal prison in Missouri. See Docket Nos. 36-41. There simply is no prejudice to the Moving Defendants if this matter proceeds as a single action.

C. **Joinder Is Appropriate in the Interest of Judicial Economy and Does Not Prejudice the Moving Defendants**

Efficiency and judicial economy will best be served by preserving joinder in this case. Noticeably, the Moving Defendants do not even attempt to argue that severance would promote judicial economy. In fact, severance would undoubtedly result in a waste of judicial time and resources as GEICO would be forced to file separate complaints against each of the defendants,

forcing separate discovery and trial proceedings of the same fraudulent billing and treatment protocols, involving the same examinations, the same range of motion/manual muscle testing, the same outcome assessment testing, the same EMG/NCV testing and the same physical therapy treatment, employing the same CPT codes and the same fraudulent misrepresentations – all containing duplicative discovery and legal arguments.[10] Severance also would put the Court at risk of inconsistent decisions based on identical questions of fact and law.

As to discovery, there can be no genuine dispute that discovery is expected to be largely identical for all parties. Due to the fact that the allegations against all Defendants are virtually identical and involve the same fraudulent billing and treatment protocols as well as the same misrepresentations to GEICO, GEICO intends to serve virtually identical document demands and interrogatories to all Defendants. Likewise, it is expected that the Defendants would serve virtually identical document demands and interrogatories and seek to depose the same corporate representatives from GEICO. Additionally, GEICO's requested depositions of the defendants would overlap as GEICO would seek to depose the "treating practitioners" working for the PC Defendants, the technicians involved in the so-called "performance" of the diagnostic tests that contained matching data drawn from a stock of data, and the individuals involved in the purported "lease"-kickback arrangements among the Defendants and the Clinics where the PC Defendants operated. This discovery is absolutely expected to overlap among the Defendants

---

[10] The Moving Defendants' reliance on "swarm-joinder" cases is of almost absurd proportions. The circumstances in these type of cases (Def. Mem. at pp. 12-13) are so vastly different from the case at hand, that their holdings should have no bearing on this case. Swarm-Joinder cases typically involve technical concepts related to technology. In fact, the validity of the "swarm joinder" theory is the subject of a wide-ranging split in this Circuit and others. SBO Pictures, Inc. v. Does 1–20, 2012 WL 2304253, at *2 (S.D.N.Y. 2012)("Dozens of district courts have reached conflicting conclusions"). In this case, there are 6 PC Defendants, not hundreds of Defendants that would result in some unwieldy discovery process or schedule. Noticeably, the Moving Defendants rely heavily on Nassau Cnty. Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas Co., 497 F.2d 1151 (2d Cir. 1974), yet cannot cite but one more Second Circuit case (from the District of Connecticut) in support of their argument against Joinder (Def. Mem. at pp. 12-14). Further, Nassau Cnty., is wholly inapposite to the case herein, as in that case claims were brought against 160+ separate insurance carriers lacking virtually any commonality in fact or law. Comparing that to here, where the allegations in the Complaint are based on common questions of law and fact, this is not a situation in which hundreds of individual-nuanced discovery proceedings will be conducted.

given the virtually identical and interrelated no-fault fraud schemes described in the Complaint, including the common involvement of two particular "treating doctors" with almost all of the Defendants.  See e.g. Valley Psychological, 2012 WL 3614431 at *4 (denying severance in part where claims arising out of the common set of facts and law would require the same witnesses and documentary proof); Gerace, 2009 WL 5042621 at *3 (denying severance where discovery is anticipated to include overlapping evidence, documents and witnesses); Laureano, 2007 WL 2826649, at *9 (denying motion to sever because "the parties are in the initial stage of discovery and all of the discovery relating to [defendants] would have to be duplicated if the actions were severed"); Todaro v. Siegel Fenchel & Peddy, P.C., 2008 WL 682596 at *3-4 (E.D.N.Y. 2008) (denying severance where claims involved numerous common witnesses for plaintiffs' claims).[11] Having to conduct virtually identical discovery and depose the same individuals runs completely contrary to the purpose of Rule 20.  Gibbs, 383 U.S. at 724; Crown Cork, 288 F.R.D. at 333.

Finally, the Moving Defendants have shown no prejudice should the matter proceed without severance.  See e.g. Beth Israel Medical Center v. Goodman, 2013 WL 1248622 at *5 (S.D.N.Y. 2013)(denying motion to sever in early stages of litigation where defendant did not put forth a showing of prejudice should they have to proceed through discovery on a "common case management schedule.").  The reality is, should the claims remain joined, the Moving Defendants would engage in the same discovery process as if they were named as the only

---

[11] In the unlikely event that discovery reveals the claims are not logically related, the Moving Defendants would remain free to move to sever at that point or to move to seek limiting jury instructions.  See e.g. Laureano, 2007 WL 2826649, at *9 (denying motion to sever pre-discovery because party could later move for severance);Puricelli v. CAN Insur. Co., 185 F.R.D. 139, 144 (N.D.N.Y. 1999)(any prejudice resulting from joined claims "can be remedied by a carefully drafted jury instruction"); Beer, 2009 WL 3401256 at *6 (same).  Additionally, as Judge Gleeson noted in Khaimov, severance could be addressed at a later date after economical and efficient discovery proceeds.  See Khaimov, 11-CV-2391 at February 16, 2012 Transcript, pp. 49-50.

defendants in a separate action; thus, there is no prejudice to them.[12] If, as the Moving Defendants suggest, it turns out there is no interrelationship among the defendants, and each is involved in a completely separate scheme (despite all appearances to the contrary), severance could be re-examined prior to trial.

For these reasons, maintaining GEICO's Complaint and litigating these claims in one action for efficiency and judicial economy far outweighs any purported basis for severance.

## **CONCLUSION**

For the reasons stated herein, the Moving Defendants' motion for judgment on the pleadings and to sever should be denied in its entirety. In the event that the Court finds an inadequacy in the Complaint, GEICO should be granted leave to amend.

Dated: December 11, 2015

Respectfully submitted,

RIVKIN RADLER LLP

By: _____
    Barry I. Levy (BL 2190)
    Michael A. Sirignano (MS 5263)
    Ryan Goldberg (RG 7570)
926 RXR Plaza
Uniondale, New York 11556-0926
(516) 357-3000

*Counsel for Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co.*

---

[12] In fact, in this early stage of the litigation, the Court is responsible for deciding relevant legal and factual questions and prejudice is not a germane concern. See e.g. Wausau Bus Ins. Co. v. Turner Const. Co., 2001 WL 963943 at *3 (S.D.N.Y. 2001).