UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO INDEMNITY COMPANY,
GEICO GENERAL INSURANCE COMPANY     REPORT AND
and GEICO CASUALTY CO.,     RECOMMENDATION

                       Plaintiffs,     15 CV 4077 (CBA)(RML)

-against-

GRACIA MAYARD, *et al.*,

                       Defendants.
------------------------------------------------------------X

LEVY, United States Magistrate Judge:

        Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co. (collectively, "plaintiffs" or "GEICO") commenced this action on July 10, 2015, asserting claims against twelve defendants arising out of a fraudulent insurance scheme. On October 12, 2018, plaintiffs moved for a default judgment against defendants Allmed Medical of Williamsburg, P.C. ("Allmed"), Billy Geris, M.D. ("Dr. Geris"), Jamaica Medical Plaza, P.C. ("Jamaica Medical"), Pavel Yutsis, M.D. ("Dr. Yutsis"), and Lifex Medical Care, P.C. ("Lifex") (collectively, the "defaulting defendants"). By order dated October 22, 2018, the Honorable Carol Bagley Amon, United States District Judge, referred plaintiffs' motion to me for a report and recommendation. For the reasons stated below, I respectfully recommend that plaintiffs' motion be granted and that the court enter a judgment for liability and damages against each defendant as set forth below.

## BACKGROUND AND FACTS

        Plaintiffs allege that the defaulting defendants engaged in a large-scale insurance fraud scheme, in which they submitted to GEICO thousands of fraudulent no-fault insurance bills

through Allmed, Jamaica Medical, and Lifex (the "defaulting PC defendants") for medically unnecessary tests and procedures. (Complaint, dated July 10, 2015 ("Compl."), Dkt. No. 1, ¶¶ 1-2, 5-6.) Plaintiffs claim that the defaulting defendants exploited New York's "no-fault" automobile insurance laws by submitting fraudulent no-fault billing for medical services allegedly provided to individuals involved in New York automobile accidents. (Id. ¶¶ 26-35.) GEICO, which underwrites automobile insurance (id. ¶ 25), is obligated under New York's "no-fault" law and implementing regulations to provide personal injury benefits to insureds for necessary expenses in amounts up to $50,000 per person. See N.Y. INS. LAW §§ 5101-5109; 11 N.Y.C.R.R. §§ 65-1.1 through 65-5.5. Insureds may assign their no-fault benefits to healthcare providers in exchange for healthcare services, allowing the provider to receive payment directly from the insurance company. See 11 N.Y.C.R.R. § 65-3.11(a).

The defaulting PC defendants did not maintain stand-alone practices, lease space, or employ support staff. Rather, as set forth in detail in the complaint, the defaulting defendants gained access to healthcare clinics throughout the greater New York City area by paying kickbacks to the individuals and entities that controlled the clinics; the kickback payments were disguised as legitimate fees to "lease" space and/or personnel from the clinics. (Compl. ¶¶ 37-40.) In exchange for these kickbacks, the insureds that visited the clinics were automatically referred to the defaulting defendants for the fraudulent services—including digital range of motion and muscle tests, outcome assessment testing, physical therapy, and electro-diagnostic tests—regardless of individual symptoms or presentment. (Id. ¶¶ 1-5, 41.) By establishing unlawful kickback relationships with the clinics, the defaulting defendants gained access to the clinics, and thus were able to implement their fraudulent treatment and billing protocol to bill automobile insurers, including GEICO. (Id. ¶¶ 37-49.)

Plaintiffs assert state law claims against all of the defaulting defendants for common law fraud and unjust enrichment. (Compl. ¶¶ 249-261, 289-301, 329-341.) Additionally, plaintiffs seek to hold Dr. Geris and Dr. Yutsis liable for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). (Id. ¶¶ 282-288, 322-328.) Plaintiffs allege that GEICO has paid $1,526,970.80 in reliance on fraudulent billing that the defaulting defendants submitted or caused to be submitted. (Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment, dated Oct. 12, 2018 ("Pls.' Mem."), Dkt. No. 104-6, at 12.) Specifically, plaintiffs seek $448,397.53 from Allmed, $712,761.38 from Jamaica Medical and Dr. Geris, and $365,811.89 from Lifex and Dr. Yutsis. (Id. at 12 n.2; see also Declaration of Garin Scollan, Esq., dated Oct. 12, 2018 ("Scollan Decl."), Dkt. No. 104-1, ¶ 17.) Plaintiffs also allege that the defaulting defendants have submitted bills for reimbursement to GEICO totaling approximately $556,469.21 for allegedly fraudulent services, which GEICO has yet to pay. (Scollan Decl. ¶ 11; Pls.' Mem. at 12-13.) Plaintiffs request a declaratory judgment that they are not obligated to pay the outstanding claims. (Compl. ¶ 228; Pls.' Mem. at 16-19.)

## DISCUSSION

### I. LIABILITY

A. <u>Default Judgment</u>

Plaintiffs have demonstrated that all of the defaulting defendants were properly served with the summons and complaint. (Affidavits of Service of Michael Corleone, sworn to July 21, 2015, Dkt. Nos. 11, 12, 16; Affidavit of Service of Tony Conigliaro, sworn to July 18, 2015, Dkt. No. 17; Affidavit of Service of Tony Conigliaro, sworn to Aug. 12, 2015, Dkt. No. 21.) In addition, the Clerk of the Court has noted the default of each defaulting defendant,

confirming that none has filed an answer or otherwise moved with respect to the complaint, and that the time to do so has expired. (Clerk's Certificates of Default, dated Oct. 7, 2015, Dkt. Nos. 37, 38, 39, 40, 41.)

It is well settled that, upon default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). "The issue remains, however, whether plaintiff[s'] well-pleaded allegations in the complaint, if accepted as true, establish liability for all of the claims plaintiffs raise against defendants." Gov't Emps. Ins. Co. v. Infinity Health Prods., Ltd., No. 10 CV 5611, 2012 WL 1427796, at *4 (E.D.N.Y. Apr. 6, 2012), report and recommendation adopted, 2012 WL 1432213 (E.D.N.Y. Apr. 25, 2012) (citations omitted). I will address each of plaintiffs' claims in turn.

B. Common Law Fraud Claims Against the Defaulting Defendants

"Under New York law, for . . . plaintiff[s] to prevail on a claim of fraud, [they] must prove five elements by clear and convincing evidence: (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff[s], (5) that causes damage to the plaintiff[s]." Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997). "Where multiple defendants are alleged to have committed fraud, the complaint must specifically allege the fraud perpetrated by each defendant." Infinity Health Prods., Ltd., 2012 WL 1427796, at *5 (citation omitted). Additionally, Rule 9(b) of the Federal Rules of Civil Procedure requires that a party alleging fraud "state with particularity the circumstances constituting fraud[.]" FED. R. CIV. P. 9(b). To plead fraud with particularity, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the

statements were made, and (4) explain why the statements were fraudulent." Gov't Emps. Ins. Co. v. Parkway Med. Care, P.C., No. 15 CV 3670, 2017 WL 1133282, at *7 (E.D.N.Y. Feb. 21, 2017) (quotations omitted), report and recommendation adopted, 2017 WL 1131901 (E.D.N.Y. Mar. 24, 2017). "Plaintiffs need to allege only a general knowledge of the misrepresentation or omission and intent to defraud, but they must allege enough facts to give rise to a strong inference that the defendants had the requisite intent to defraud." Gov't Emps. Ins. Co. v. Spectrum Neurology Grp., LLC, No. 14 CV 5277, 2016 WL 11395017, at *3 (E.D.N.Y. Feb. 17, 2016), adopted sub nom., Gov't Emps. Ins. Co. v. Premier Prof'l Servs., LLC, 2016 WL 1071099 (E.D.N.Y. Mar. 18, 2016). "This requirement may be satisfied by alleging facts that show that defendants had both motive and opportunity to commit fraud, or by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id. (quotations omitted).

Plaintiffs allege, in detail and with specificity, that the defaulting defendants not only knew they were submitting fraudulent claims for medical services to GEICO, but that they did so intentionally as part of a calculated scheme to profit from payment of the claims, and that they actively misrepresented and concealed information in an effort to prevent GEICO from discovering that the claims were fraudulent. (Compl. ¶¶ 36-219.) "These facts give rise to a strong inference of fraudulent intent, and are thus sufficient to establish the scienter requirement." Infinity Health Prods., Ltd., 2012 WL 1427796, at *5 (citing Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006)); see also Gov't Emps. Ins. Co. v. Gateva, No. 12 CV 4236, 2014 WL 1330846, at *6 (E.D.N.Y. Mar. 30, 2014).

Moreover, plaintiffs sufficiently allege reasonable reliance by explaining GEICO's duties under the no-fault laws, and by claiming that GEICO made payments in reliance

5

on the fact that the bills appeared, on their face, to have been submitted in accordance with the law. (Compl. ¶ 218 ("The facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and fraudulent litigation activity described above, were designed to and did cause GEICO to rely upon them."); see id. ¶¶ 211-21920-23, .) Plaintiffs have established that they were damaged by the misrepresentations by asserting that they have paid out over one million dollars for fraudulent claims. (Scollan Decl. ¶ 17.)

"These particularities are more than sufficient to show that each . . . defendant is liable for fraud." Infinity Health Prods., Ltd., 2012 WL 1427796, at *6 (citing AIU Ins. Co. v. Olmecs Med. Supply, Inc., 2005 WL 3710370, at *14 (E.D.N.Y. Feb. 22, 2005)); see also Gov't Emps. Ins. Co. v. Jacques, No. 14 CV 5299, 2017 WL 9487191, at *7 (E.D.N.Y. Feb. 13, 2017), report and recommendation adopted, 2017 WL 1214460 (E.D.N.Y. Mar. 31, 2017) (collecting cases). Therefore, I respectfully recommend that the defaulting defendants be found liable for common law fraud.

C. Unjust Enrichment Claims Against the Defaulting Defendants

For plaintiffs to prevail on a claim of unjust enrichment under New York law, they "must establish (1) that the defendant[s] w[ere] enriched; (2) that the enrichment was at the plaintiff[s'] expense; and (3) that the circumstances are such that in equity and good conscience the defendant[s] should return the money . . . to the plaintiff[s]." Golden Pac. Bancorp v. F.D.I.C., 273 F.3d 509, 519 (2d Cir. 2001) (citing Universal City Studios, Inc. v. Nintendo Co., 797 F.2d 70, 79 (2d Cir. 1986)). See also AIU Ins. Co., 2005 WL 3710370, at *5-6.

Plaintiffs have adequately alleged that each of the defaulting defendants benefitted at plaintiffs' expense because they received payouts on claims to GEICO for medical

6

services that were inflated, exaggerated, fabricated, or fraudulent. (See Compl. ¶¶ 164-172; 187-192.) Plaintiffs have demonstrated that the defaulting defendants participated in an elaborate, large-scale plan designed to "siphon money out of a statutory scheme designed for the public good" and that "equity and good conscience require restitution." Infinity Health Prods., Ltd., 2012 WL 1427796, at *6. Therefore, I respectfully recommend that the defaulting defendants be held liable for unjust enrichment.

### D. RICO Claims Against Dr. Geris and Dr. Yutsis

Plaintiffs allege that Drs. Geris and Yutsis violated RICO, 18 U.S.C. § 1962(c), through their operation of two racketeering enterprises: Jamaica Medical, owned by Dr. Geris; and Lifex, owned by Dr. Yutsis. (Compl. ¶¶ 282-288, 322-328.) To establish civil liability under RICO, plaintiffs must demonstrate that these defaulting defendants violated 18 U.S.C. § 1962, and that plaintiffs suffered resulting damages. See AIU Ins. Co., 2005 WL 3710370, at *19-20. "For a § 1962(c) violation, the elements are: (1) the defendant; (2) through the commission of two or more predicate acts; (3) constituting a pattern; (4) of racketeering activity; (5) directly or indirectly participated; (6) in an enterprise; (7) the activities of which affected interstate commerce." Infinity Health Prods., Ltd., 2012 WL 1427796, at *7 (citing AIU Ins. Co., 2005 WL 3710370, at *6). Additionally, the defendant and the enterprise must be separate entities, "not simply the same person referred to by a different name." Gov't Emps. Ins. Co. v. Hollis Med. Care, P.C., No. 10 CV 4341, 2011 WL 5507426, at *4 (E.D.N.Y. Nov. 9, 2011) (citations and quotation marks omitted). See also Allstate Ins. Co. v. Lyons, 843 F. Supp. 2d 358, 368-69 (E.D.N.Y. 2012).

Mail fraud is a racketeering activity. 18 U.S.C. § 1961(1). "Pleading mail fraud requires: (1) the existence of a scheme to defraud; (2) the use of United States mails or interstate

wire communications to further that scheme; and (3) evidence that defendants did so with a specific intent to defraud." Infinity Health Prods., Ltd., 2012 WL 1427796, at *7 (citing Am. Arbitration Ass'n, Inc. v. Defonseca, No. 93 CV 2424, 1996 WL 363128, at *9 (S.D.N.Y. June 28, 1996)).

To sustain their RICO claims, plaintiffs must additionally establish, with respect to each such cause of action, a "pattern of racketeering activity" consisting of "at least two acts of racketeering activity" undertaken within a ten-year period. See 18 U.S.C. § 1961(5). "To establish a pattern, a plaintiff must also make a showing that the predicate acts of racketeering activity by a defendant are 'related, and that they amount to or pose a threat of continued criminal activity.'" DeFalco v. Bernas, 244 F.3d 286, 320 (2d Cir. 2001) (quoting H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989)). One means of satisfying this so-called "continuity" requirement is "by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008). "Where an inherently unlawful act is performed at the behest of an enterprise whose business is racketeering activity, there is . . . open-ended continuity." DeFalco, 244 F.3d at 323 (citing H.J. Inc., 492 U.S. at 242-43).

GEICO's complaint alleges with particularity that Jamaica Medical and Lifex are RICO enterprises, see 18 U.S.C. § 1961(4), and that Dr. Geris and Dr. Yutsis are natural persons associated with the enterprises who knowingly conducted and/or participated in their business. (Compl. ¶¶ 283-284, 323-324.) These allegations are sufficient to satisfy RICO's enterprise requirement. See Hollis Med. Care, P.C., 2011 WL 5507426, at *4-5. According to plaintiffs, Dr. Geris participated in an extensive scheme over a period of at least six years, in which he used

8

the United States mail to submit numerous fraudulent claims to GEICO totaling more than $712,000 through Jamaica Medical. (Compl. ¶¶ 284-287.) Likewise, the complaint alleges that Dr. Yutsis participated in a large-scale scheme over a period of more than seven years, in which he used the United States mail to submit hundreds of fraudulent claims to GEICO totaling at least $365,000 through Lifex. (Compl. ¶¶ 324-327.) "Indeed, the very basis of the . . . fraudulent scheme[s] was th[e] submission of fraudulent bills . . . to GEICO by use of the mail." Hollis Med. Care, P.C., 2011 WL 5507426, at *8. The complaint describes the specific circumstances constituting the fraudulent scheme, details Dr. Geris's and Dr. Yutsis's participation in the scheme, and includes an exhibit of samples of fraudulent bills that they mailed or caused to be mailed to GEICO on specific dates and times. (Compl. ¶¶ 283-287, 323-327; Exs. 4, 6.) Moreover, plaintiffs have alleged substantially more than two predicate acts of mail fraud as to each of these defendants. (See, e.g., Compl. ¶¶ 284, 324, Exs. 4, 6.) Additionally, plaintiffs have established that open-ended continuity exists because Jamaica Medical's and Lifex's fraudulent billing involved inherently unlawful acts, conducted through enterprises whose entire business was racketeering activity involving the submission of fraudulent claims for no-fault benefits. See, e.g., Compl. ¶¶ 283-285, 323-325; see also Lyons, 843 F. Supp. 2d at 369-70. Hence, the pattern element has been satisfied.

Plaintiffs have sufficiently alleged that the scheme constituted mail fraud under the statute, and that as a result of this ongoing pattern of unlawful activity, GEICO suffered significant monetary damages. (See Compl. ¶¶ 284-287, 324-327.) Therefore, I respectfully recommend that both Dr. Geris and Dr. Yutsis be held liable for violating RICO, 18 U.S.C. § 1962(c).

9

## II. DAMAGES

"'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible to mathematical computation.'" John Hancock Life Ins. Co. v. Perchikov, No. 04 CV 98, 2010 WL 185007, at *3 (E.D.N.Y. Jan. 15, 2010) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)). Where, as here, the defendants have never appeared, "the Court's determination is based solely on plaintiff[s'] submissions." Gilbert v. Hotline Delivery, No. 00 CV 160, 2001 WL 799576, at *2 (S.D.N.Y. July 10, 2001).

### A. Common Law Damages

In support of their motion, plaintiffs submitted the declarations of Garin Scollan, an attorney representing GEICO (see Scollan Decl.), and Robert Weir, a Claims Manager at GEICO (see Declaration of Robert Weir, dated Oct. 5, 2018, Dkt. No. 104-3). Mr. Weir provided a "tax identification payment run" ("TIN Run") listing all voluntary payments on claims by GEICO to Allmed, Jamaica Medical, and Lifex. (See Scollan Decl. ¶ 16; Weir Decl., ¶ 4, Ex. 1.) The TIN Run identifies the billing medical provider, claim numbers, dates of payment, check draft numbers, and amounts of payments made. (See Weir Decl., Ex. 1.) Courts have found this type of documentary evidence adequate to award damages in similar insurance fraud default cases. See Allstate Ins. Co. v. Howell, No. 09 CV 4660, 2013 WL 5447152, at *7 (E.D.N.Y. Sept. 30, 2013); Allstate Ins. Co. v. Smirnov, No. 12 CV 1246, 2013 WL 5407224, at *15 (E.D.N.Y. Aug. 21, 2013). Hence, plaintiffs' documentation is sufficient.

Therefore, I respectfully recommend that the defaulting PC defendants be held liable for damages as follows:

| PC Defendant | Amount |
|---|---|

| Allmed | $448,397.53 |
| Jamaica Medical | $712,761.38 |
| Lifex | $365,811.89 |

(See Weir Decl., ¶ 8, Ex. 1.) I further recommend that Dr. Geris be held jointly and severally liable for the $712,761.38 GEICO paid to Jamaica Medical, and that Dr. Yutsis be held jointly and severally liable for the $365,811.89 GEICO paid to Lifex. See Allstate Ins. Co. v. Yehudian, No. 14 CV 4826, 2018 WL 1767873, at *18 (E.D.N.Y. Feb. 15, 2018), report and recommendation adopted, 2018 WL 1686106 (E.D.N.Y. Mar. 31, 2018).

B. RICO Damages as to Dr. Geris and Dr. Yutsis

Plaintiffs request that Drs. Geris and Yutsis be held liable for treble damages, as provided under RICO. (Pls.' Mem. at 33-34.) Treble damages are available under RICO, 18 U.S.C. § 1964(c), and such an award is appropriate in a default judgment. Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc., No. 10 CV 1762, 2013 WL 168079, at *7 (E.D.N.Y. Jan. 16, 2013).

As explained, plaintiffs have introduced evidence of fraudulent claims paid by GEICO totaling $712,761.38 to Jamaica Medical, owned by Dr. Geris, and $365,811.89 to Lifex, owned by Dr. Yutsis. (Weir Decl. ¶ 8.) Plaintiffs have also established that Drs. Geris and Yutsis are liable for RICO violations.[1] Therefore, plaintiffs are entitled to treble damages of

---

[1] Although civil RICO claims are governed by a four-year statute of limitations, plaintiffs' records include payments made more than four years before this litigation was filed. The four-year civil RICO limitations period begins to run when the plaintiff discovers or should have discovered the RICO injury. See Parkway Med. Care, P.C., 2017 WL 1133282, at *16 n.6. Although the records submitted by plaintiffs include payments that fall outside of the applicable limitations period for RICO, plaintiffs allege that the defaulting defendants fraudulently concealed their scheme from GEICO. (See Compl. ¶¶ 211-219.) "A defendant's fraudulent concealment of its unlawful conduct tolls the running of the statute of limitations if certain factual conditions are met." Parkway Med. Care, P.C., 2017 WL 1133282, at *16 n.6 (citing
(Continued….)

11

$2,138,284.14 from Dr. Geris ($712,761.38 x 3)[2] and $1,097,435.67 from Dr. Yutsis ($365,811.89 x 3).[3]

C. Pre-judgment Interest

New York law provides for the award of pre-judgment interest on damages for fraud, computed from the "earliest ascertainable date the cause of action existed" at the non-compoundable rate of nine percent (9%) per annum. N.Y. C.P.L.R. §§ 5001(a), 5004. "In the context of insurance fraud, prejudgment interest accrues from the date the insurance company makes payment." Gov't Emps. Ins. Co. v. AMD Chiropractic, P.C., No. 12 CV 4295, 2013 WL 5131057, at *9 (E.D.N.Y. Sept. 12, 2013) (citation and internal quotation marks omitted).

Plaintiffs request that the pre-judgment interest be computed from the first day of the year following the payment of each individual fraudulent claim to the defaulting defendants. (Pls.' Mem. at 34-35.) This methodology has been followed in this district in other no-fault insurance fraud cases awarding damages on default. See, e.g., Jacques, 2017 WL 9487191, at *16; AMD Chiropractic, 2013 WL 5131057, at *9. In support of their request for pre-judgment interest, plaintiffs provide Mr. Scollan's sworn declaration and accompanying charts calculating the interest in accordance with statutory requirements. (See Scollan Decl., Ex. C.)

According to that supporting documentation, plaintiffs paid Allmed $137,411.85 in no-fault claims reimbursements in the year 2008; $273,748.89 in the year 2009; $36,445.34 in

---

Klehr v. A.O. Smith Corp., 521 U.S. 179, 194 (1997)). As the court is obligated to construe all factual allegations in the complaint as true, I have calculated plaintiffs' damages under the assumption that equitable tolling applies. See id.; see also Jacques, 2017 WL 9487191, at *15; Gov't Emps. Ins. Co. v. Simakovsky, No. 14 CV 3775, 2015 WL 5821407, at *11 n.3 (E.D.N.Y. Oct. 5, 2015).

[2] As noted above, $712,761.38 of this amount is joint and several with Jamaica Medical.

[3] $365,811.89 of this amount is joint and several with Lifex.

12

the year 2010; $650 in 2012; and $141.45 in 2014. Using plaintiffs' preferred method of calculation, Allmed owes plaintiffs $368,014.25 in pre-judgment interest through and including December 31, 2018. (See Scollan Decl. ¶ 19, Ex. C.) Plaintiffs are also entitled to per diem interest from January 1, 2019 to the date of the final entry of judgment. The per diem is calculated by multiplying the daily interest rate by the principal.[4] Accordingly, beginning on January 1, 2019 and through the date of entry of judgment, the pre-judgment interest that Allmed owes plaintiffs will continue to accrue at the rate of $110.56 per day.

Plaintiffs paid Jamaica Medical $45,112.25 in no-fault claims reimbursements in the year 2007; $352,937.45 in the year 2008; $274,802.53 in 2009; and $39,909.15 in 2010. (Scollan Decl., Ex. C.) As set forth in the interest chart, Jamaica Medical owes plaintiffs $607,214.62 in pre-judgment interest through and including December 31, 2018. Additionally, beginning on January 1, 2019 and through the date of entry of judgment, the pre-judgment interest that Jamaica Medical owes the plaintiffs will continue to accrue at the rate of $175.75 per day ($712,761.38 multiplied by the daily interest rate).

Plaintiffs paid Lifex $186,940.26 in no-fault claims reimbursements in the year 2007; $172,025.87 in the year 2008; $6,222.65 in 2010; and $623.11 in 2011. (Scollan Decl., Ex. C.) As set forth in the interest chart, Lifex owes plaintiffs $341,474.70 in pre-judgment interest through and including December 31, 2018. Additionally, beginning on January 1, 2019 and through the date of entry of judgment, the pre-judgment interest that Lifex owes the plaintiffs will continue to accrue at the rate of $90.20 per day ($365,811.89 multiplied by the daily interest rate).

---

[4] The daily interest rate is calculated by dividing the annual interest rate by the days in the year. In this case that calculation is: .09 / 365 = .00024658. The principal for this calculation is the amount paid by GEICO to Allmed ($448,397.53).

13

With respect to the RICO claims against Dr. Geris and Dr. Yutsis, "[w]here, as here, treble damages are adequate to compensate plaintiffs, an award of pre-judgment interest would generally be inappropriate." Chubb & Son Inc. v. Kelleher, No. 92 CV 4484, 2010 WL 5978913, at *8 (E.D.N.Y. Oct. 22, 2010), report and recommendation adopted, 2011 WL 839553 (E.D.N.Y. Mar. 7, 2011). However, since plaintiffs have asserted a supplemental state claim for fraud, they are entitled under New York law to pre-judgment interest on damages arising under that claim. Id. ("Under New York law, awarding pre-judgment interest on damages awarded for fraud is mandatory."). Accordingly, I respectfully recommend that Dr. Geris and Dr. Yutsis be held jointly and severally liable for the prejudgment interest assessed against Jamaica Medical and Lifex, respectively.

### III. Declaratory Judgment

Plaintiffs seek a declaratory judgment against the defaulting defendants due to the fraudulent scheme and misrepresentations perpetuated by these defendants. A court may exercise its discretion to issue a declaratory judgment where the party seeking it demonstrates the existence of an actual case or controversy. See 28 U.S.C. § 2201(a); Infinity Health Prods., Ltd., 2012 WL 1427796, at *4. "Declaratory relief is appropriate '(i) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (ii) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings.'" Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co., 196 F. Supp. 2d 378, 384 (S.D.N.Y. 2002) (quoting Md. Cas. Co. v. Rosen, 445 F.2d 1012, 1014 (2d Cir. 1971)). "Courts within this district have, on numerous occasions, found these requirements met in actions by insurers seeking declaratory judgments regarding obligations relating to

allegedly fraudulent claims." Infinity Health Prods., Ltd., 2012 WL 1427796, at *4 (citation omitted).

Plaintiffs have established an actual controversy where a declaratory judgment would afford specific relief and clarify their legal obligations as to pending claims. As discussed above, plaintiffs' complaint alleges that the defaulting PC defendants collectively submitted over one million dollars in fraudulent claims that GEICO has already paid out, as well as bills for $556,469.21 worth of unpaid fraudulent claims. (Compl. ¶¶ 221-222; Pls.' Mem. at 18-19.) The complaint alleges, with particularity as to each of the defaulting defendants, that these pending claims are fraudulent because they are part of defendants' ongoing scheme to submit false or inflated claims for medical services within New York's no-fault laws. Plaintiffs also allege that the billed-for services were not provided by employees of the defaulting PC defendants, but were provided pursuant to the illegal kickback arrangements between those defendants and others. (Compl. ¶ 228.) Furthermore, plaintiffs allege that the medical services provided were not medically necessary, and that some medical services were not performed at all. (Id. ¶¶ 222-227.)

The inflated claims and claims made for medical services not actually supplied are all fraudulent claims under the no-fault statutory scheme. See Infinity Health Prods., Ltd., 2012 WL 1427796, at *4 n.2 (citing AIU Ins. Co., 2005 WL 3710370, at *2-4, 14) (noting that no-fault laws provide that knowingly filing a claim containing materially false or misleading information is a crime); N.Y. INS. LAW § 403(d). Plaintiffs thus have established their entitlement to a declaratory judgment. Therefore, I respectfully recommend that this court enter a declaratory judgment that plaintiffs are not obligated to pay the outstanding fraudulent claims submitted by the defaulting PC defendants.

**CONCLUSION**

For the foregoing reasons, I respectfully recommend that plaintiffs' motion for a default judgment be granted, that defendants Allmed Medical of Williamsburg, P.C., Billy Geris, M.D.,[5] Jamaica Medical Plaza, P.C., Pavel Yutsis, M.D., and Lifex Medical Care, P.C. be held liable for common law fraud and unjust enrichment, and that defendants Dr. Geris and Dr. Yutsis be held liable for violating RICO, 18 U.S.C. §§ 1962(c). I respectfully recommend that damages be awarded as follows:

(1) Allmed Medical of Williamsburg, P.C. be held liable for $448,397.53 in compensatory damages and $368,014.25 in prejudgment interest, plus $110.56 per day from January 1, 2019 through the date of entry of judgment;

(2) Jamaica Medical Plaza, P.C. and Billy Geris, M.D. be held jointly and severally liable for $712,761.38 in compensatory damages and $607,214.62 in pre-judgment interest, plus $175.75 per day from January 1, 2019 through the date of entry of judgment;

(3) Lifex Medical Care, P.C. and Pavel Yutsis, M.D. be held jointly and severally liable for $365,811.89 in compensatory damages and $341,474.70 in pre-judgment interest, plus $90.20 per day from January 1, 2019 through the date of entry of judgment;

(4) Billy Geris, M.D. be held individually liable for an additional $1,425,522.76 in RICO damages ($2,138,284.14 - $712,761.38);

(5) Pavel Yutsis, M.D. be held individually liable for an additional $731,623.78 in RICO damages ($1,097,435.67 - $365,811.89).

I also respectfully recommend that this court enter a declaratory judgment that plaintiffs are not obligated to pay the outstanding claims.

---

[5] I note that Dr. Geris has been found liable in at least one other insurance fraud case in this court. See Parkway Med. Care, P.C., 2017 WL 1133282.

Plaintiffs are directed to serve a copy of this report and recommendation on each defaulting defendant by first-class mail and to electronically file proof of service with the court within three (3) days. Any objections to this report and recommendation must be filed with the Clerk of Court, with courtesy copies to Judge Amon and to my chambers, within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d).

          Respectfully submitted,

          /s/
          ROBERT M. LEVY
          United States Magistrate Judge

Dated: Brooklyn, New York
       May 8, 2019